2011 OK CR 27

**Deborah Ann LEFTWICH, Petitioner,**

v.

**The Honorable Stephen ALCORN, Judge of the District Court of Oklahoma County, Respondent.**

No. PR–2011–862.

Court of Criminal Appeals of Oklahoma.

Oct. 13, 2011.

*ORDER DECLINING TO ASSUME JURISDICTION AND DENYING MOTIONS*

¶ 1 The Petitioner has filed an application for original jurisdiction, a petition for writ of prohibition, and in the alternative a petition for writ of mandamus in Case No. CF–2010–8067 in the District Court of Oklahoma County.

¶ 2 This Court previously denied Petitioner's petition for writ of prohibition or mandamus based on the District Court's decision denying Petitioner's motions to dismiss. *Leftwich v. Alcorn*, PR–2011–319 (Okl. Cr. June 9, 2011) (not for publication). Petitioner subsequently filed for a writ of prohibition or mandamus in the Oklahoma Supreme Court. After a hearing, that Court declined to assume original jurisdiction and dissolved

a stay of the trial court proceedings. *Leftwich v. Court of Criminal Appeals*, 2011 OK 80, 262 P.3d 750, 2011 WL 4375305.

¶ 3 Petitioner returns to this Court. She asks this Court to assume original jurisdiction of her petition. While this Court has exclusive appellate jurisdiction in criminal cases, Oklahoma Constitution art. VII, § 4, no provision in either this Court's rules or statute provides for such a request. Petitioner's original petition to this Court was timely filed within thirty days from the District Court's April 15, 2011 Order denying her motions to dismiss. Rule 10.1(C), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2011). Petitioner has filed this second application more than ten days prior to the date the case is set for preliminary hearing in the District Court. Rule 10.2, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2011). However, Petitioner is not asking for relief from any district court order issued between this Court's denial of her first petition and the filing of this petition. There is no such order, nor has Petitioner requested any type of relief from the District Court between the date of the Supreme Court Order and the filing of this application. This Court may only grant relief on an extraordinary writ where a petitioner has been denied relief in a district court. Rule 10.1(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2011).

¶ 4 In asking this Court to assume original jurisdiction, Petitioner relies solely on dicta in the Supreme Court Order declining original jurisdiction. In the body of the Order, the Supreme Court states it declines original jurisdiction "in order to allow the parties the opportunity to seek appropriate relief in the Court of Criminal Appeals." *Leftwich*, 2011 OK 80, ¶ 3, 262 P.3d 750. There is no such avenue open in our Rules. Essentially, Petitioner asks this Court to rehear the substance of her first petition. This Court's June 9, 2011 decision on that petition constituted a final order. There is no petition for rehearing from an order denying a request for an extraordinary writ. Rule 10.6(D), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App.

(2011). At this point in these proceedings, there is no decision in the District Court from which Petitioner may timely appeal and no findings of fact that would support any additional substantive ruling by this Court. This Court does not act as a factfinder in the first instance. Petitioner's claim that her activities were constitutionally protected requires a factual determination that has not been made, and hence is premature in this Court.

¶ 5 The Supreme Court Order of September 19, 2011, states that the parties agreed that this Court's previous Order in this case contained a mistake of law. On the contrary, our finding that "[t]he Speech and [sic] Debate Clause in the Oklahoma Constitution includes an express exception for felonies", is an accurate statement of law. *Leftwich v. Alcorn*, PR–2011–319 at 3. Insofar as such an agreement may have existed among some of the named parties, we refer them to the following cases. *Brock v. Thompson*, 1997 OK 127, ¶ 14, 948 P.2d 279, 287; *Oklahoma State Senate ex rel. Roberts v. Hetherington*, 1994 OK 16, 868 P.2d 708; *Howard v. Webb*, 1977 OK 68, ¶ 16, 570 P.2d 42, 47; *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972); *Williamson v. United States*, 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278 (1908).

¶ 6 Petitioner's applications for relief are not proper under our Rules. We **DECLINE TO ASSUME ORIGINAL JURISDICTION.** Petitioner's Motion for Stay is **DENIED.** Petitioner's Motion to Incorporate Or Transfer Appendix is **DENIED.** Petitioner's Motion Requesting Oral Argument is **DENIED.**

¶ 7 **IT IS SO ORDERED.**

/s/ Arlene Johnson
ARLENE JOHNSON, Presiding Judge

/s/ David B. Lewis
DAVID B. LEWIS, Vice Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge

/s/ Clancy Smith
CLANCY SMITH, Judge

A. JOHNSON, Presiding Judge, Specially Concurring.

¶ 1 I concur in the result and rationale of today's order declining to accept original jurisdiction over Petitioner Leftwich's petition. I write separately, however, to forestall the legal confusion that may arise from the circuitous and extraordinary route this criminal case has traveled from the district court and, now, back again.

### JURISDICTION

¶ 2 Jurisdiction in this case is properly in this Court. Under the laws of this State, this Court alone is vested with appellate jurisdiction in criminal matters. *See* Okla. Const. art. VII, § 4 ("the Court of Criminal Appeals shall have exclusive appellate jurisdiction in criminal cases until otherwise provided by statute"); 20 O.S.2001, § 40 ("[t]he Court of Criminal Appeals shall have exclusive appellate jurisdiction, coextensive with the limits of the state, in all criminal cases appealed from the district, superior and county courts, and such other courts of record as may be established by law"). Further, this Court has the power to issue various writs, including Prohibition and Mandamus, in aid of this jurisdiction. Okla. Const. art. VII, § 4 (the "Court of Criminal Appeals, in criminal matters ... shall have power to issue, hear and determine writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition and such other remedial writs as may be provided by law"); 20 O.S.2001, § 41 (the Court of Criminal Appeals "and Judges thereof shall have the power to issue writs of habeas corpus; and under such regulations as may be prescribed by law, issue such writs as may be necessary to exercise its jurisdiction"). The exclusivity of this Court's jurisdiction has been implicitly noted by the Oklahoma Supreme Court in this case and explicitly in others. *See Leftwich v. Court of Criminal Appeals*, 2011 OK 80, ¶ 3, 262 P.3d 750 (noting that appropriate relief, if any, is

found in the Court of Criminal Appeals); *In the Matter of M.B.*, 2006 OK 63, ¶ 14, 145 P.3d 1040, 1047 (finding where an issue "arises out of and relates to a criminal case ... the Court of Criminal Appeals has exclusive jurisdiction"); *State ex rel. Henry v. Mahler*, 1990 OK 3, ¶ 19, 786 P.2d 82, 87 ("[p]arties may not circumvent the exclusive jurisdiction of the Court of Criminal Appeals by filing an original action in this Court when they disagree with that Court's rulings"). As our order today implicitly recognizes, however, our rules "have the force of statute." 22 O.S.2001, § 1051(b). We are therefore bound by them and cannot exercise jurisdiction over a petition that is not properly before us in accordance with those rules.

¶ 3 Leftwich's petition here, however, would fail even if considered on the merits of the single new issue she now raises. It is this issue that brings us to the matter of the Oklahoma Supreme Court's order in *Leftwich v. Oklahoma Court of Criminal Appeals*, 2011 OK 80, 262 P.3d 750.

¶ 4 The petition Leftwich now brings us differs from her earlier petition to this Court in that she now claims entitlement to the writ based on the Oklahoma Supreme Court's Order of September 19, 2011, declining to accept original jurisdiction over her petition for a writ of mandamus or prohibition against this Court. In the body of its order, the Supreme Court states that the parties agreed that our previous order in this case should not be enforced because it contained a mistake of law concerning our construction of the Speech or Debate Clause of Article V, § 22 of the Oklahoma Constitution.[1] *Leftwich* 2011 OK 80, ¶ 2, 262 P.3d at 751–52. To the extent this statement might reflect the Supreme Court's endorsement of the purported positions of the parties in this case, it is dicta because the statement was unnecessary to resolve the jurisdictional question addressed by the order. Further, assuming that the Supreme Court's representation of the parties' position is accurate, I disagree

---

1. Article V, § 22 of the Oklahoma Constitution states:
   Senators and Representatives shall, except for treason, felony, or breach of the peace, be privileged from arrest during the session of the Legislature, and in going to and returning from the same, and, and, for any speech or debate in either House, shall not be questioned in any other place.

that our construction of the Speech or Debate Clause of Article V, § 22 of the Oklahoma Constitution in our original order was mistaken.[2]

## OKLAHOMA CONSTITUTION ARTICLE V, § 22

¶ 5 The Oklahoma Supreme Court has held that the first portion of Article V, § 22, which provides protection from arrest except for treason, felony, or breach of the peace, refers only to a privilege from arrest in civil matters and there is "no privilege from arrest for even the most minor criminal offenses." *Howard v. Webb,* 1977 OK 68, ¶ 16, 570 P.2d 42, 47. Thus, under Article V, § 22's arrest clause, Leftwich may be prosecuted if she has committed any crime.

¶ 6 The Oklahoma Supreme Court has previously declared that the fundamental purpose of the second portion of Article V, § 22, the Speech or Debate Clause, "is to ensure that the legislative function may be ·performed free from a threat of litigation," *Brock v. Thompson,* 1997 OK 127, ¶ 14 n. 28, 948 P.2d 279, 288 n.28, and that Article V, § 22's "Speech or Debate clause absolutely protects legislators from *suit* calling for judicial inquiry into their performance within the sphere of legitimate legislative activity." *Brock,* 1997 OK 127, ¶ 14, 948 P.2d 279, 287(emphasis added). It is clear, under the Oklahoma Supreme Court's civil jurisprudence, the constitutional speech or debate privilege applies broadly to suits against legislators, but is limited in scope. That is, the privilege extends its protection only so far as the suit requires judicial inquiry into the sphere of "legitimate" legislative activity. *See e.g., Oklahoma State Senate ex rel. Rob-*

*erts v. Hetherington,* 1994 OK 16, ¶ 1, 868 P.2d 708, 709. Neither we nor the Oklahoma Supreme Court, however, have ever addressed in a published opinion the question of whether, or to what extent, the Speech or Debate Clause of Article V, § 22 applies in a criminal case. We must, therefore, look elsewhere for guidance on this issue.

¶ 7 Because Article V, § 22 is modeled on Article I, § 6 of the United States Constitution,[3] our sister court has found federal jurisprudence instructive when construing Section 22's provisions in the civil context. *See e.g., Brock,* 1997 OK 127, ¶ 14 n. 26–28, 948 P.2d at 288 n. 26–28 (discussing the history and purposes of Article I, § 6 and Article V, § 22, reviewing federal cases, and concluding that "Oklahoma's Speech or Debate Clause ... was taken directly from the United States Constitution's Art. I, § 6, cl. 1," and concluding further that "Oklahoma's Speech or Debate Clause, Art. 5, § 22, Okl. Const. .... provides at least as much protection as the immunity granted by the comparable provisions of the Federal Constitution"); *Howard,* 1977 OK 68, ¶¶ 5–16, 570 P.2d 42, 43–47 (construing Oklahoma's Article V, § 22 arrest privilege by comparing to federal privilege in Article I, § 6 and using federal case law to inform its holding that Section 22's privilege from arrest encompasses only arrest on civil process and provides "no privilege from arrest for even the most minor criminal offenses"). I find this approach sound and follow the same course.

¶ 8 In *United States v. Brewster,* 408 U.S. 501, 521, 92 S.Ct. 2531, 2542, 33 L.Ed.2d 507 (1972), the United States Supreme Court addressed the relationship between the arrest privilege and speech or debate clause of Article I, § 6 of the United States Constitution:

---

**2.** In its order declining jurisdiction, the Oklahoma Supreme Court stated in passing that it need not address any issues relating to its "supervisory writ jurisdiction over the Court of Criminal Appeals." *Leftwich v. Court of Criminal Appeals,* 2011 OK 80, ¶ 3, 262 P.3d 750. To avoid any confusion in this regard, I remind the parties that as noted in the main text, under the Oklahoma Constitution and existing statutes, this Court exercises exclusive appellate and writ jurisdiction in all criminal cases appealed from the district courts. Thus, the Constitution and stat-

utes of this State have clearly established this Court as the court of last resort in criminal cases.

**3.** Article I, § 6 of the United States Constitution states in relevant part:
They [Senators and Representatives] shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

We recognize that the privilege against arrest is not identical with the Speech or Debate privilege, but it is closely related in purpose and origin. It can hardly be thought that the Speech or Debate Clause totally protects what the sentence preceding it has plainly left open to prosecution, i.e., all criminal acts.

Applying this reasoning to Oklahoma's Article V, § 22, the joining of the arrest privilege and its felony exception to the speech or debate privilege in the same sentence can only mean that under our Constitution the speech or debate privilege is not absolute. The single sentence comprising Article V, § 22 contains an express exception allowing the arrest of legislators for felonious acts. It would be contrary to all logic and rules of construction to find that the speech or debate privilege contained in the same sentence forbids the questioning of witnesses in cases it allows to be prosecuted. As the United State Supreme Court implicitly recognized in *Brewster*, with regard to the federal constitution, any other construction would be absurd. *Brewster*, 408 U.S. at 521, 92 S.Ct. at 2542. Thus, to the extent the parties in this case may have represented to our sister court that our previous order in this case erred as a matter of law by concluding that the Speech or Debate Clause includes an exception for felonies, it is the parties who are mistaken, and we cannot be bound by their misinterpretation of the Clause. *Cf. Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)("[i]t is emphatically the province and duty of the *judicial department* to say what the law is")(emphasis added).

¶ 9 Having determined that the Speech or Debate Clause of the Oklahoma Constitution does not raise an absolute privilege against judicial inquiry into felony criminal activity by legislators, we must delineate the scope of protected activity. Again, reference to federal jurisprudence is useful. In *Brewster*, cited above, the United States Supreme Court also addressed the scope of permissible inquiry under the federal Speech or Debate Clause in the following words:

The only reasonable reading of the Clause, consistent with its history and purpose, is that it does not prohibit inquiry into activi-

ties that are casually or incidentally related to legislative affairs but not a part of the legislative process itself.

408 U.S. at 528, 92 S.Ct. at 2545. Thus, under the federal constitution's Speech or Debate Clause, legislative activities that are not a direct part of the legislative process itself are subject to inquiry in a criminal prosecution even though the acts are performed in a legislator's official capacity. *See also, Gravel v. United States*, 408 U.S. 606, 626, 92 S.Ct. 2614, 2628, 33 L.Ed.2d 583 (1972)(explaining that Speech or Debate Clause "does not privilege either Senator or aide to violate an otherwise valid criminal law in preparing for or implementing legislative acts"); *United States v. Myers*, 692 F.2d 823, 860 (2d Cir.1982)("Speech or Debate Clause accords immunity to what is said on the House floor in the course of the legislative process ... not to whispered solicitations to commit a crime")(internal citation to *Gravel* omitted). Given the similarities in the language of Article V, § 22 and its federal counterpart, and given the similarities in history and purpose of Article V, § 22 and its federal counterpart noted in *Brock* and *Howard*, cited above, I find the United States Supreme Court's reasoning in *Brewster* persuasive. Indeed, the Oklahoma Supreme Court relied on *Brewster*'s reasoning when it held in *Brock* that the absolute protection of the privilege in the civil realm applies only to judicial inquiry into a legislator's "legitimate legislative activity." *Brock*, 1997 OK 127, ¶ 14, 948 P.2d at 287.

¶ 10 Logically then, if the scope of the speech or debate privilege against questioning a legislator about potentially criminal acts depends on whether certain legislative acts are integral parts of the legislative process, or are merely casually or incidentally related to it, or are part of some legitimate legislative activity, the applicability or non-applicability of the privilege is a fact-driven determination.

¶ 11 In this instance, no factual record has been developed in the District Court or presented to this Court. Specifically, there is no evidence in the meager record before us as to whether any of the legislators named as potential witnesses in this case have even

invoked the Speech or Debate Clause privilege against being questioned about their legislative activities.[4] *Cf. Gravel,* 408 U.S. at 621–622, 92 S.Ct. at 2625 (holding that speech or debate privilege is privilege of individual senator "invocable only by the Senator" or by staff member on his behalf). In fact, there is some evidence to the contrary. For example, the probable cause affidavit attached to the charging information states that Representative Mike Christian and Senator Anthony Sykes were interviewed by investigators and the affidavit contains information attributed to these legislators. Nothing in the record before us remotely suggests, however, that these interviews were not voluntary or that either legislator attempted to invoke the speech or debate privilege to avoid answering investigators' questions. Nor is there any evidence that any of the other witness-legislators listed on the charging information have refused to be questioned under the Speech or Debate Clause privilege. Moreover, I note that much of the potential evidence set out in the probable cause affidavit comes from public documents, open source press reports, and interviews with non-legislative branch government employees. It is not at all clear at this juncture, therefore, that it will be necessary for the State to use evidence gleaned from questioning legislators to prosecute its case at trial.

¶ 12 As our order points out, this Court does not act as a fact-finder in the first instance, and I find that the factual record before us clearly is inadequate to decide whether any legislators have either invoked the speech or debate privilege, or whether any questions to be put to any legislators incidentally relate to legislative affairs, but not the legislative process itself (i.e., the sphere of legitimate legislative activity). In the absence of a record sufficient to address these questions, I conclude that Leftwich fails to meet her burden of demonstrating a clear entitlement to relief in the form of a writ of mandamus. *See* Rule 10.6(B), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011)("[p]etitioner has

the burden of establishing … he has a clear legal right to the relief sought").

¶ 13 Nor has Leftwich demonstrated the inadequacy of other relief, a necessary prerequisite for either a writ of mandamus or writ of prohibition. *See* Rule 10.6(A), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (201 l)(stating that among other things, for writ of prohibition, petitioner must establish that the "exercise of said power [by a judicial official] will result in an injury for which there is no other adequate remedy"); Rule 10.6(B)(for writ of mandamus, petitioner "has the burden of establishing … the adequacy of mandamus and the inadequacy of other relief"). Leftwich merely asserts that a writ is necessary in this instance because "[o]nce a preliminary hearing occurs and the Executive Branch is allowed to publicly investigate allegations of improper [legislative] motives … the Speech or Debate privilege will have been breached, and it will be impossible to remedy the violation" (Petitioner's Brief in Support of Application for Writ at 11). She fails to address, however, why dismissal of the case, or suppression of testimony or other evidence provided by privileged legislators, or even direct appeal, are not adequate remedies once a violation of the privilege is actually made out in proceedings in the trial court. Such remedies have been recognized by the federal courts in their Article I, § 6 Speech or Debate Clause jurisprudence. *See e.g., Helstoski v. Meanor,* 442 U.S. 500, 508, 99 S.Ct. 2445, 2449, 61 L.Ed.2d 30 (1979) (explaining that proper method for asserting privilege under Speech or Debate Clause was motion to dismiss indictment and then direct appeal to Court of Appeals); *United States v. Renzi,* 651 F.3d 1012, 2011 WL 2473960 at *15 (9th Cir.2011) (upholding indictment because evidentiary materials presented to grand jury in violation of Speech or Debate Clause were not "essential elements of proof" that may have caused grand jury to indict); *United States v. Rayburn House Office Building, Room 2113, Washington D.C. 20515,* 497 F.3d 654, 663–666 (D.C.Cir.2007)(providing

---

**4.** I take judicial notice of the record that was before us in Leftwich's original petition in Case

No. PR–2011–319.

extensive discussion of proper remedy for Speech or Debate Clause violation and then applying exclusionary rule to require FBI to return "legislative materials," privileged under Speech or Debate Clause that were seized during execution of search warrant at congressman's office); *United States v. Swindall,* 971 F.2d 1531, 1546–1550 (11th Cir.1992)(requiring dismissal of indictment where evidence was presented to grand jury in violation of Speech or Debate Clause); *United States v. Myers,* 635 F.2d 932, 941–942 (2d Cir.1980)(holding that dismissal of indictment for potential Speech or Debate Clause violation was inappropriate based on assumption that government must present privileged evidence at trial because appellant provided "no reason" for Court of Appeals "to assume that at trial the Government will be unable to abide by the constitutional restriction upon its evidence"). Leftwich provides us with no reason to conclude that similar remedies would not provide adequate relief for any Article V, § 22 Speech or Debate Clause violations that might occur in her case.

## CONCLUSION

¶ 14 The deficiencies in Leftwich's petition for mandamus or prohibition derive from the fact that the instant petition is premature. Resolution of the issues she raises can only be accomplished through the time-honored practice of presenting this Court, as a reviewing court of last resort, with a factual record sufficient for us to determine that she has demonstrated a clear entitlement to relief and the inadequacy of any other relief. Because the record in this case is so lacking in this regard, I conclude that had we accepted jurisdiction here and considered the petition on the merits of Leftwich's single new argument, this petition, like her first, would be denied.