2014 OK 33

**Clayton LOCKETT and Charles Warner, Appellants,**

v.

**Edwards EVANS, in his official capacity as Interim Director of Corrections, and Oklahoma Department of Corrections, Appellees.**

Nos. 112,741, 112,764.

Supreme Court of Oklahoma.

April 21, 2014.

---

**MEMORANDUM OPINION**

**PER CURIAM.**

¶ 1 This matter began in the District Court of Oklahoma County on February 26, 2014, with a Petition for Declaratory Relief and Request for Injunction filed against the Department of Corrections (DOC) and its interim Director by two condemned inmates who were initially scheduled to be executed, one on March 20, 2014, and the other on March 27, 2014. The Plaintiffs' request for declaratory judgment challenged the constitutionality and the DOC's interpretation of that portion of section 1015(B) of title 22 of the Oklahoma Statutes that provides:

> The identity of all persons who participate in or administer the execution process and persons who supply the drugs, medical supplies or medical equipment for the execution shall be confidential and shall not be subject to discovery in any civil or criminal proceedings. The purchase of drugs, medical supplies or medical equipment necessary to carry out the execution shall not be subject to the provisions of the Oklahoma Central Purchasing Act.

This portion of the execution of judgment of death statute was added in 2011.[1]

---

1. In the same enactment, section 1014(A) of title 22 was amended to provide: "The punishment of death shall be carried out by the administration of a lethal quantity of a drug or drugs until death

¶2 Plaintiffs maintained that the DOC has relied on the provision to block not only the source of the drug or drugs to be used in their executions but also the identity of the drug or drugs. They argued the prohibition "violates their due process rights by denying them both notice of the process by which they will be executed and meaningful access to the courts to challenge that process." Further, they argued that the provision is unconstitutional "because it precludes judicial review of the Department of Corrections' lethal-injection procedures and violates the Supremacy Clause of the United States Constitution by blocking Plaintiffs' ability to vindicate their Eighth Amendment right against cruel and unusual punishment." Additionally, Plaintiffs asserted the execution protocol is a "rule" within the meaning of the Oklahoma Administrative Procedures Act, Okla. Stat. tit. 75, § 250.3(17), "because it is an agency statement or group of related statements of general applicability and future effect that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of the agency." In addition to declaratory judgment concerning the constitutionality and interpretation of the challenged provision, Plaintiffs sought to enjoin enforcement of section 1015(B) along with "[t]emporary, preliminary and permanent injunctive relief to enjoin Defendants, their officers, agents, servants, employees and all persons acting in concert with them, from executing Plaintiffs until the details of the execution drug or drugs and the source of those drugs are disclosed to Plaintiffs and their counsel."

¶3 The Oklahoma Attorney General's Office, on behalf of the DOC and its interim Director, removed the action to the United States District Court for the Western District of Oklahoma on March 4, 2014. Plaintiffs amended their petition to remove any federal issues and the federal court remanded the matter to the District Court of Oklahoma County on March 7, 2014, for prompt resolution of the first impression challenge to the legality of section 1015(B) and "so that the Oklahoma Supreme Court itself can decide whether the statute is constitutional under the Oklahoma constitution" in an appeal from the trial court's ruling. The District Court of Oklahoma County held a hearing on March 10, 2014, and the next day issued a Journal Entry and Order which denied "Plaintiffs' request for a temporary order, and request for a temporary injunction to stay the executions of the Plaintiffs after finding that jurisdiction for such matters lies with the Oklahoma Court of Criminal Appeals."

¶4 On March 11, 2014, the condemned inmates brought an appeal (No. 112,639) of the trial court's decision that it lacked jurisdiction to issue a stay of execution, and argued that "the District Court did, in fact, have jurisdiction to not only decide the constitutionality of Section 1015(B), but also had the jurisdiction to stay the executions." Additionally, Plaintiffs sought an Emergency Application for Stay of Execution Pending Outcome of Appeal from this Court which urged that, based primarily on the likelihood of ultimate success on the declaratory judgment claims, their executions should be stayed while that litigation remains pending in the courts.

¶5 Following a response from the Attorney General, this Court, on March 13, 2014, remanded the declaratory judgment matter to the District Court of Oklahoma County for an expedited determination of the civil claims because the Application for Stay of Execution was predicated on the success of the declaratory judgment action. At the same time and with only the Application for Stay pending before it, this Court transferred the remaining Emergency Application for Stay of Execution Pending Outcome of Appeal to the Court of Criminal Appeals in deference to this Court's longstanding practice.

¶6 On remand, the District Court set the declaratory judgment matter for hearing to be held March 20, 2014, and the Court of

---

is pronounced by a licensed physician according to accepted standards of medical practice." 2011 Okla. Sess. Laws § 70. The former section 1014(A) provided: "The punishment of death must be inflicted by continuos, intravenous ad-

ministration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent until death is pronounced by a licensed physician according to accepted medical practice."

Criminal Appeals ordered briefs to be filed by March 17, 2014, concerning the Application for Stay of Execution. In its brief to the Court of Criminal Appeals, the Oklahoma Attorney General acknowledged that the DOC did not possess the drugs necessary to carry out the executions. On March 18, 2014, the Court of Criminal Appeals, on its own motion, vacated and reset the executions for thirty days in order "to allow the State of Oklahoma time to procure the necessary execution drugs or to adopt a new execution protocol." That court dismissed the inmates' request for a stay of execution as moot. New execution dates were set for April 22 and 29, 2014.

¶ 7 After the order of the Court of Criminal Appeals issued, the hearing in the District Court declaratory judgment action was reset for March 26, 2014.[2] Each side of the controversy moved for summary judgment in the declaratory judgment action. At the March 26, 2014, hearing, the trial court held the 2011 amendment to section 1015(B) unconstitutional "as a denial or barrier to Plaintiffs' right to access the Courts." The inmates again sought a stay of execution pending appeal of the declaratory judgment decision in the Court of Criminal Appeals on April 7, 2014. On April 9, 2014, that court denied the stay after it determined that its authority to issue a stay of execution is limited to a pending action in which a death row inmate challenges the conviction or sentence of death. *See* Okla. Stat. tit. 22, § 1001.1(C) (2011). Because neither of those statutory requirements were present, the stay was denied.

¶ 8 The matter was again brought before this Court in an appeal by the inmates from the March 26, 2014, order in appeal number 112,741, filed April 10, 2014. The condemned inmates challenge the portion of the trial court's order which held that the Oklahoma Administrative Procedures Act does not apply to the execution protocol and that the protocol does not constitute an unconstitu-

tional delegation of authority by the Legislature. The inmates also made an emergency application for a stay of execution from this Court during the pendency of the appeal. The DOC's response did not assert error in the trial court's determination that section 1015(B) of title 22 constitutes a denial of access to the courts. Rather, it urged that the appeal and the request for stay be transferred to the Court of Criminal Appeals. By an April 17, 2014, memorandum opinion, this Court retained the appeal but transferred the application for emergency stay to the Court of Criminal Appeals, exercising this Court's constitutional power to determine jurisdiction. The Court of Criminal Appeals refused to assume jurisdiction over the application in an order dated April 18, 2014. On the same day, the DOC and its interim Director filed an appeal (112,764) from that portion of the trial court's March 26 order that declared portions of section 1015(B) unconstitutional, bringing the issue of the constitutionality of the provision squarely before this Court.

¶ 9 There are a number of things this case is not about: 1) whether the death penalty makes sense morally or as a matter of policy—these questions are matters of conscience left to the voters and the Legislature; 2) whether Oklahoma's lethal-execution procedure is constitutional in the abstract; 3) whether the Oklahoma or United States Constitutions require that executions be painless as binding precedent holds that those documents prohibit only "the unnecessary and wanton infliction of pain;"[3] or 4) whether executions should in some manner involve the comparison of the pain suffered by victims as opposed to what the condemned must endure.

¶ 10 This case presents a very narrow question: whether these appellants should have some access to an appellate tribunal for consideration of a stay of execution based upon the consideration of grave first impres-

---

**2.** On March 21, 2014, the DOC issued a new protocol which set out five possible drug combinations to be used for lethal injection executions. On April 1, 2014, the DOC informed the inmates' counsel as to which combination had been selected for the inmates' executions.

**3.** *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

sion constitutional issues regarding the manner in which their lives will be taken. More simply, *the sole issue presented to this Court on this date is whether some court should hear their plea for a stay and ensure their constitutional right to access to the courts.*

¶ 11 The Oklahoma Constitution Article 2, section 6, provides:

> The courts of justice of the State *shall be open to every person, and certain remedy afforded for every wrong* and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

On April, 17, 2014, Thursday last, *we exercised our constitutional authority to determine the appropriate tribunal for resolution of the stay issue under the Oklahoma Constitution, Article 7, section 4, vesting this Court with the sole power to determine whether the jurisdiction of the stay issue was within this Court or the Court of Criminal Appeals.* In so doing, we transferred the request for stay "alone" to the Court of Criminal Appeals.

¶ 12 *The majority of the Court of Criminal Appeals refused to exercise this Court's order and to address the merits of the stay.* That order, which we consider to be invalid as not having followed the constitutional directive of this Court, have now resulted in a situation never contemplated by the drafters of Oklahoma's ultimate rule of law—that this tribunal be inserted into death penalty cases. A position generally reserved for the Court of Criminal Appeals.

■ ¶ 13 The "rule of necessity" now demands that we step forward. The rule is a well-established, common-law principle. Generally, it requires a judge to remain in a case regardless of the judge's preference, if the sole power to decide a controversy resides in that official.[4] Here, the Court of Criminal Appeals' refused to exercise its rightfully placed jurisdiction, and left this Court in an awkward position. We can deny jurisdiction, or we can leave the appellants with no access to the courts for resolution of their "grave" constitutional claims. *As uncomfortable as this matter makes us, we refuse to violate our oaths of office and to leave the appellants with no access to the courts, their constitutionally guaranteed measure.*

¶ 14 The appeal by the DOC and its interim Director has placed the issue of the secrecy provision of section 1015(B) undisputedly within this Court's appellate jurisdiction. In consideration of the constitutional rights of the appellants, the "grave" constitutional questions raised in their appeals, the Court of Criminal Appeals' refusal to grant relief or to consider the stay matter as a part of its constitutional responsibilities, we hereby grant the request for stay pending appeal and expedite the procedures pursuant to Oklahoma Supreme Court Rule 1.36 to ensure the earliest possible resolution of the underlying constitutional questions raised by all parties in these direct appeals.

¶ 15 Pursuant to Article 7, section 4 of the Oklahoma Constitution, A STAY OF EXECUTION IS HEREBY ISSUED until final determination of all issues presently pending before this Court in this appeal along with all issues that may be brought by the DOC and its interim Director and any legal challenges that may arise as a result of this Court's resolution of those issues are actively litigated. Appeal number 112,741 and appeal number 112,764 are hereby consolidated under surviving number 112,741 pursuant to Rule 1.27(d) of the Oklahoma Supreme Court Rules. Appellants' motion for leave to file additional briefs is denied.

COLBERT, C.J., REIF, V.C.J.,
KAUGER, WATT and COMBS, JJ., concur.

WINCHESTER, EDMONDSON,
TAYLOR and GURICH, JJ., dissent.

TAYLOR, J., dissenting.

For the fourth time in this case, I dissent and urge that this Court transfer *all* the issues to the Court of Criminal Appeals. In the first and final analysis, all of the Appellant's claims are criminal in nature. This is a challenge to the method and protocol used in the execution of the death penalty. As I

---

**4.** *See, United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980); *Fent v. Okla-homa Capitol Improvement Auth.,* 1999 OK 64, 984 P.2d 200 (Opala, J. concurring in result).

wrote in my second dissent, all these issues are "inextricably intertwined" with criminal procedure and criminal law. This is simply an Eighth Amendment cruel and unusual punishment challenge to the death penalty. There is nothing new about that. The Appellants have now successfully turned this criminal case into a civil case.

This case has traveled a very long and complete journey through full due process of law. I warned in a previous dissent that this Court was crossing the Rubicon in its refusal to transfer this case to the proper court and now it is clear that the Appellants are taking full advantage of our being on the wrong side of that proverbial river. This diversion at the end of that journey is ignoring long-standing precedent and recent law. *Maynard v. Layden*, 1992 OK CR 31, 830 P.2d 581. *See Sells v. Livingston*, 750 F.3d 478, 2014 WL 1357039 (5th Cir.2014); *Sells v. Livingston*, 561 Fed.Appx. 342, 2014 WL 1316339 (5th Cir.2014) *cert. denied* —— U.S. ——, 134 S.Ct. 1787, 188 L.Ed.2d 612, 2014 WL 1325278 (2014); *Clemons v. Crawford*, 585 F.3d 1119 (8th Cir.2009) *cert. denied*, 561 U.S. 1026, 130 S.Ct. 3507, 177 L.Ed.2d 1092 (2010). The Court of Criminal Appeals has properly denied the Stay of Execution.

I disagree with the Majority Opinion that the Appellants have raised "grave first impression constitutional issues".

The Appellants have maneuvered this Court right where they set out to put us and that is, for the first time in this Court's relevant history, in the middle of a death penalty appeal. We have never been here before and we have no jurisdiction to be here now.