2016 OK CR 1

**Kurt MEYER, Petitioner,**

v.

**Honorable Dawson ENGLE, Special Judge, Lincoln County, Respondent.**

**No. MA–2015–874.**

Court of Criminal Appeals of Oklahoma.

Jan. 22, 2016.

## ORDER REJECTING APPLICATION TO WITHDRAW RULING

¶ 1 On the 23rd day of December, 2015, Petitioner, Kurt Meyer, filed his application requesting that this Court withdraw its order dismissing this matter as untimely filed.

¶ 2 Petitioner is charged with murder in the District Court of Lincoln County Case No. CF–2015–09. On May 22, 2015, Petitioner filed his Motion to Disqualify seeking to have the Honorable Dawson R. Engle, Special Judge, recuse from presiding over his preliminary hearing. Following evidentiary hearings, Judge Engle denied Petitioner's motion on July 10, 2015. Petitioner filed his Request for Rehearing on July 15, 2015 seeking to have the Chief Judge grant his requested relief. On Thursday, October 1, 2015, the Honorable Cindy Ferrell Ashwood, District Judge, entered an order denying Petitioner's rehearing request. Petitioner did not file his Petition for Writ of Mandamus in this Court until Wednesday, October 7, 2015.

¶ 3 On October 28, 2015, this Court dismissed Petitioner's petition as untimely because it exceeded the five-day limitation period established by District Court Rule 15(b). *Mitchell v. State*, 2006 OK CR 20, ¶ 84 n. 189, 136 P.3d 671, 705 n. 189; Rule 10.6(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015).[1] Petitioner did not file for an appeal out of time as provided for in our Rules. *See* Rule 2.1(E), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015); *Blades v. State*, 2005 OK CR 1, ¶ 5, 107 P.3d 607, 608.

¶ 4 On November 4, 2015, Petitioner filed his Petition for Writ of Mandamus against the Court of Criminal Appeals and the individual judges currently comprising the Court of Criminal Appeals in Oklahoma Supreme Court Case Number 114,409. Petitioner sought to have the Oklahoma Supreme Court issue the writ directing this Court to withdraw its order dismissing his petition, determine that his petition before this Court was timely filed, and fairly consider the petition.

¶ 5 On December 14, 2015, the Oklahoma Supreme Court assumed original jurisdiction over Petitioner's case and issued its Order granting "[d]eclaratory relief to provide for uniform computation of the time periods set forth in District Court Rule 15, 12 O.S.2011, Ch. 2, App." and announced that "[a]ll time periods shall be computed based upon business days whether disqualification is sought in a civil or criminal case." Although this Order did not direct this Court to take any action in his case, Petitioner asserts that the Oklahoma Supreme Court's Order requires this Court to now construe his appeal as timely filed.

¶ 6 The Oklahoma Constitution provides for a bifurcated civil-criminal system of justice. *Carder v. Court of Criminal Appeals*, 1978 OK 130, ¶ 1, 595 P.2d 416, 417. Article VII, § 4 of the Oklahoma Constitution sets forth the jurisdiction of the Oklahoma Supreme Court and the Oklahoma Court of Criminal Appeals. *Id.*, 1978 OK 130, ¶¶ 10–12, 595 P.2d at 419. The Oklahoma Supreme Court's original jurisdiction extends to a general superintendent control over all inferior courts. *Id.* 1978 OK 130, ¶ 10, 595 P.2d at 419. The appellate jurisdiction of the Oklahoma Supreme Court is coextensive with the State and extends to all cases in law and equity *except* for criminal

---

1. Rule 10.6(B), which governs this Court's issuance of a writ of mandamus, is consistent with and complies with District Court Rule 15(b). Rule 10.6(B) provides that "in matters involving disqualification of judges in criminal cases, if a hearing before the second judge results in an order adverse to the movant, he/she shall have *not more than five (5) days from the date of the order* to institute a proceeding in this Court." (emphasis added)

cases. *Id.; Dutton v. City of Midwest City,* 2015 OK 51, ¶ 19, 353 P.3d 532, 540 ("[T]he Oklahoma Supreme Court lost its jurisdiction to provide appellate review of a judgment on a criminal cause of action upon creation of the Criminal Court of Appeals."). Instead, the Court of Criminal Appeals has exclusive appellate jurisdiction in criminal cases and may exercise such other and further jurisdiction as may be conferred by statute. *Id.,* 1978 OK 130, ¶¶ 10–12, 595 P.2d at 417; *Dutton,* 2015 OK 51, ¶ 19, 353 P.3d at 540; 20 O.S.2011, § 40 ("The Court of Criminal Appeals shall have exclusive appellate jurisdiction, coextensive with the limits of the state, in all criminal cases appealed from the district, superior and county courts, and such other courts of record as may be established by law.").[2] These circumstances require the two courts to maintain clear jurisdictional boundaries. *Id.,* 1978 OK 130, ¶ 1, 595 P.2d at 417. In the event there is any conflict as to jurisdiction, the Supreme Court determines which court has jurisdiction and such determination shall be final. *Id.* 1978 OK 130, ¶ 10, 595 P.2d at 419. The Supreme Court further reserves the right to determine when the Court of Criminal Appeals has acted in excess of its authority. *Dutton,* 2015 OK 51, ¶ 25, 353 P.3d at 544.

▮▮ ¶ 7 Under this bifurcated civil-criminal system of justice the Oklahoma Court of Criminal Appeals acts as the court of last resort for criminal matters and is empowered to adopt rules of appellate procedure in aid of its jurisdiction. The Oklahoma Supreme Court has determined that its original superintending control jurisdiction does not extend to appellate review of criminal cases. *Dutton,* 2015 OK 51, ¶¶ 33–36, 353 P.3d at 549–50. "There is no appeal or writ of error from the Court of Criminal Appeals to [the Oklahoma Supreme] Court." *Dutton,* 2015 OK 51, ¶ 34, 353 P.3d at 550. Instead, the Supreme Court has long recognized that the Court of Criminal Appeals has the "power and jurisdiction to review and correct those proceedings of inferior courts for determination in the manner provided by law." *Card-*

*er,* 1978 OK 130, ¶ 12, 595 P.2d at 419. This includes the issuance of writs of prohibition and mandamus in the exercise or aid of this jurisdiction. *Id.* "Because the Court of Criminal Appeals has exclusive appellate jurisdiction in criminal matters and jurisdiction to issue supervisory writs in aid of its appellate jurisdiction, that Court is the court which uses a writ power to supervise a criminal matter in a criminal controversy or action that is proceeding in the District Court." *Dutton,* 2015 OK 51, ¶ 29, 353 P.3d at 546. Moreover, the Oklahoma Supreme Court further recognizes that, in the absence of a deficient statutory remedy, the Legislature's appellate procedure for criminal appeals shall not be circumvented. *Dutton,* 2015 OK 51, ¶ 34, 353 P.3d at 549–50. The Oklahoma Legislature has specifically authorized the Court of Criminal Appeals to establish the procedure for filing an appeal within the Rules of the Court of Criminal Appeals. 22 O.S.2011, § 1051(b). These Rules have the force and effect of statute. *Id.*

▮ ¶ 8 Under this authority, the Court of Criminal Appeals has adopted a rule concerning the computation of time. Rule 1.4, *Rules of the Court of Criminal Appeals,* Title 22, Ch. 18, App. (2015), adopts the calendar day computation of time limits. Under this method, the first calendar day is excluded and the last calendar day is included to complete the time period. *See Pitts v. State,* 2003 OK CR 21, ¶ 5, 78 P.3d 551, 553. This is the traditional method by which time has been computed in this Court. The Court of Criminal Appeals' earliest rules adopted this time computation method. Rule 2.1(C), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22. Ch. 19, App. (1951). This Court first published Rule 1.4 in 1981. Rule 1.4, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22. Ch. 19, App. (1981). We have consistently and uniformly applied this method of computing time for filing appeals and Rule 1.4 has given guidance and notice to litigants for decades. *Banks v. State,* 1998 OK CR 5, ¶ 5, 953 P.2d 344, 345 ("Practice in the Oklahoma Court of Criminal

---

**2.** Exclusive is defined as "Relating to or marked by exclusion. Not shared with others. Independent or single. Complete or whole, etc ...".

Webster's II, 450 (New Riverside University Edition).

Appeals is governed by the Rules of the Court of Criminal Appeals, and guidance in applying those Rules is found in cases decided by the Court of Criminal Appeals.").

¶ 9 This Court does not maintain Rule 1.4 solely for the sake of tradition. Instead, Rule 1.4 conforms to the many statutes that the Legislature has adopted relating to time limitations in criminal proceedings.

¶ 10 The Oklahoma Legislature has provided for fairly lenient computation of time in civil cases. Title 12 O.S.2011, § 2006 adopts the "business" day for the computation of time in civil cases. *See Pitts v. State*, 2003 OK CR 21, ¶ 7, 78 P.3d 551, 553–54 (recognizing computation of time pursuant to § 2006 only includes days when court clerk remains open for public business). However, the Legislature has explicitly limited § 2006 to "suits of a civil nature." *Id.*, 2003 OK CR 21, ¶ 9, 78 P.3d at 554 (finding § 2006 inapplicable to criminal proceedings based upon explicit language of 12 O.S.2001, § 2001). Title 12 O.S.2011, § 990A adopted the "mailbox rule" which recognizes that an appellate pleading is considered filed on the date of its mailing with the post office. *See Hunnicutt v. State*, 1997 OK CR 77, ¶ 5, 952 P.2d 988, 989 (recognizing § 990A as enacting the "mailbox rule."). However, the Legislature specifically limited § 990A to appeals to the Supreme Court of Oklahoma. *Id.*, (finding § 990A only applicable to appeals to Oklahoma Supreme Court). Both § 2006 and § 990A are located in the Oklahoma Pleading Code which 12 O.S.2011, § 2001 explicitly limits to "all suits of a civil nature." *Pitts*, 2003 OK CR 21, ¶¶ 9, 14, 78 P.3d at 554, 555 (*overruling State v. Pratt*, 1991 OK CR 95, 816 P.2d 1149, based on failure to recognize significance of § 2001).

¶ 11 In contrast, the Legislature has adopted the calendar day method of computation of time in criminal proceedings. *See* 22 O.S.2011, § 812.1 (time limit to begin trial); 22 O.S.2011, § 953 (time for applying for new trial); 22 O.S.2011, § 982a (time limit for modification of sentence). All of the statutes relating to the time for taking a criminal appeal compute time in the same way. These statutes reference "days from the date of" the event which triggered the right to

appeal. 22 O.S.2011, §§ 1054, 1087, 1089(D)(1), 1089.2. The Legislature has not made provision for computation of time through "business" days or enacted a "mailbox rule" in the Code of Criminal Procedure. *Hunnicutt*, 1997 OK CR 77, ¶ 6, 952 P.2d at 989; *Pitts*, 2003 OK CR 21, ¶¶ 11–14, 78 P.3d at 554–55.

¶ 12 It is important to note that the procedures established for criminal proceedings in Oklahoma provide for an appeal out of time when, through no fault of the petitioner, an appeal was not timely. *Banks v. State*, 1998 OK CR 5, ¶ 6, 953 P.2d 344, 346; Rule 2.1(E), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22. Ch. 18, App. (2016). This procedure provides greater protection to criminal defendants than the mechanisms in the civil procedure. *Id.*

¶ 13 As to appeals seeking the disqualification of an assigned judge, this Court has determined that a party seeking such relief must file an original proceeding in mandamus with this Court, within five days of the adverse order. *Mitchell*, 2006 OK CR 20, ¶ 84 n. 189, 136 P.3d at 705 n. 189; Rule 10.6(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015). This Court will not entertain a mandamus action seeking disqualification of the assigned judge, unless it is shown that the relief sought was previously denied by the judge to whom the matter was re-presented in accordance with District Court Rule 15(b), 12 O.S.2011, Ch. 2, App. *Id.* This Court applies the same method of time computation consistent throughout the Court's rules and excludes the first calendar day but includes the last calendar day to complete the time period. Rule 1.4, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015).

¶ 14 Despite the fact that Petitioner's counsel were seasoned criminal law practitioners well versed in this Court's method of time computation, counsel omitted to timely file Petitioner's original mandamus action. The divergent methods of time computation employed in our State between civil and criminal matters have existed for decades. An innumerable number of attorneys have

ably navigated this distinction for many years. Counsel's omission to timely file Petitioner's petition was not a byproduct of the lack of uniformity of time computation within the State. Instead, the responsibility for this Court's dismissal of Petitioner's case falls squarely at counsel's feet. And, rather than seeking the relief available in this Court through an application for an appeal out of time, Petitioner sought action from the Oklahoma Supreme Court.

¶ 15 The Oklahoma Supreme Court refused to grant Petitioner the writ which he had requested. Instead, the Supreme Court granted declaratory relief. We note that the Supreme Court did not identify a conflict of jurisdiction in the present circumstances nor did the Supreme Court conclude that this Court had acted in excess of its authority in dismissing Petitioner's petition. In the absence of such a determination, we must respectfully conclude that the Order in Petitioner's case was a request for comity.

¶ 16 It appears that the Oklahoma Supreme Court's request was made without consideration of the conflict and confusion that would exist if we adopted conflicting methods of time computation for the taking of criminal appeals. As it stands, Rule 1.4 is the only method of time computation for the taking of a criminal appeal. However, this Court will review its rules for the sake of comity to determine whether the rules can be amended in such a manner as to prevent confusion to litigants in the many types of appeals brought to this Court in the future.

¶ 17 This Court's order dismissing Petitioner's appeal as untimely constitutes a final order. *Leftwich v. Alcorn*, 2011 OK CR 27, ¶ 4, *262 P.3d 770*, 771; Rule 10.6(D), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015) ("Once this Court has rendered its decision on an extraordinary writ, that decision shall constitute a final order."). A petition for rehearing is not allowed. *Id.*, ("There is no petition for rehearing from an order denying a request for an extraordinary writ."). Petitioner has

not presented any authority supporting the revival of his dismissed appeal. No provision in either the statutes or this Court's rules provides for such review. *Id.* As such, the application is **REJECTED.**[3]

¶ 18 **IT IS SO ORDERED.**

/s/ Clancy Smith
CLANCY SMITH, Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Vice Presiding Judge

/s/ Arlene Johnson
ARLENE JOHNSON, Judge

/s/ David B. Lewis
DAVID B. LEWIS, Judge

/s/ Robert Hudson
ROBERT HUDSON, Judge

CLANCY SMITH, Presiding Judge,
DAVID B. LEWIS, ROBERT HUDSON, JJ. (specially concurs).

SMITH, Presiding Judge, Specially Concurring.

¶ 1 I agree with the majority that this Application is not properly before this Court. I write separately to emphasize that, under our Rules, we cannot accept Meyer's Application or rule on the merits of his claim that his original filing in this Court was not time-barred. This Court's Rules have the force of statute, and we are bound by them. 22 O.S.2011, § 1051(b). We dismissed Meyer's original petition for extraordinary relief. That ruling was a final order, and there is no rehearing from that order. Rule 10.6(D), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2015). There was no request to this Court for an appeal out of time. No intervening order or action in the underlying criminal case has occurred since our decision dismissing Meyer's petition. Meyer asks this Court to withdraw that decision and reach the merits of his original petition. No provision in our Rules allows this Court to take that action, and we cannot assume original jurisdiction over this

---

3. The Clerk of this Court is directed to return to Petitioner his Application to Withdraw Ruling. Rule 10.6(D), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016).

The Clerk is further directed to maintain a copy of the tendered application for record keeping purposes only.

Application. *Leftwich v. Alcorn*, 2011 OK CR 27, ¶ 3, 262 P.3d 770, 771.

¶ 2 Meyer relies on language in the Oklahoma Supreme Court order stating that the time periods relating to disqualification of judges shall be computed based on business days in both civil and criminal matters. We cannot reach the merits of this claim. The Supreme Court declined to issue a writ, merely granting general declaratory relief, without stating any specific relief in this case. Nothing in the Supreme Court's brief Order can be construed as a suggestion that this Court acted without authority in dismissing Meyer's petition. Nowhere in the Order is there any suggestion that this Court contravene its own rules in order to hear a request otherwise forbidden by those Rules. We are persuaded that the Supreme Court cannot and would not make such a suggestion, knowing that this Court must, like the parties before it, abide by our Rules. *Leftwich*, 2011 OK CR 27, ¶ 4, 262 P.3d at 771.

¶ 3 It is clear that Meyer's Application is not proper under our Rules. He claims this Court must alter its computation of the time within which his petition for writ of mandamus must have been filed. I concur with the majority's thorough and well-reasoned discussion explaining the history and purpose of use of calendar days for computation of time in this Court. In every portion of the Oklahoma Code of Criminal Procedure, the Legislature mandated that appellate time periods should be computed using calendar days; the Legislature exempted this Court from the different time computation requirements of the Oklahoma Code of Civil Procedure. This emphasis, in criminal cases, on the actual days passing in any given criminal proceeding ensures that the statutory and constitutional rights of criminal defendants, including the right to a speedy trial, are protected. Based solely on the limits of our authority under our Rule 10.6(D), I agree that we must decline to assume original jurisdiction and reject the Application.

¶ 4 I am authorized to state that Judge Johnson joins in this specially concurring opinion.

LEWIS, J: Specially Concurs.

¶ 1 What troubles me the most about this case and its history is that I am no longer surprised that the Oklahoma Supreme Court would entertain an extraordinary writ in a criminal case. This Court's authority is clearly spelled out by law.

¶ 2 The Oklahoma Constitution and relevant Oklahoma statutes grant this Court exclusive jurisdiction over criminal matters. The Oklahoma Supreme Court does not have the authority in criminal cases to determine which court rules apply in criminal cases.

¶ 3 This might be a matter, in my opinion, where the legislature should become involved and reaffirm this Court's exclusive appellate jurisdiction in criminal matters.

HUDSON, J., Specially Concurs.

¶ 1 I specially concur in today's Order. It provides not only a proper reading of the constitutional and statutory provisions granting the Oklahoma Court of Criminal Appeals exclusive appellate jurisdiction in all criminal cases but also illustrates the statutorily-based considerations unique to our criminal law jurisprudence which warrant a departure from the Oklahoma Supreme Court's interpretation of Rule 15(b), *Rules for District Courts*, 12 O.S.2011, Ch. 2, App., in civil cases.

¶ 2 I write separately to address the "elephant in the room" surrounding our decision today—namely, whether this Court truly has exclusive appellate jurisdiction in all criminal cases or not? The Oklahoma Supreme Court entered an order on December 14, 2015, granting Kurt Meyer declaratory relief through an interpretation of Rule 15(b), *Rules for District Courts*, 12 O.S.2011, Ch. 2, App., which is directly contrary to application of our Rules to perfect an appeal. *See Meyer v. Smith*, 2015 OK 86, 366 P.3d 311. In so doing, the Oklahoma Supreme Court boldly announced that its interpretation of Rule 15(b) shall apply "whether disqualification is sought in a civil *or criminal case.*" *Meyer*, 2015 OK 86, ¶ 1, 366 P.3d 311 (emphasis added).

¶ 3 Armed with this published order, Meyer's defense attorneys (predictably) have re-

turned to our Court demanding that we resurrect his time-barred mandamus action and proceed to the merits of his application to disqualify the assigned magistrate from hearing the preliminary hearing in his case. Perhaps this would be a routine procedural matter in other states. But in Oklahoma, the Court of Criminal Appeals has *exclusive* appellate jurisdiction, coextensive within the limits of the state, in all criminal cases and may exercise such other and further jurisdiction as may be conferred by statute—including jurisdiction over extraordinary relief applications like the one filed by Meyer. Okla. Const. art. VII, § 4; 20 O.S.2011, §§ 40–41. This is nothing new. Nor is it anything we have created for ourselves. This Court's very existence dates to statehood. Our exclusive appellate jurisdiction in all criminal cases has been mandated continuously since 1909 and has been a bedrock principle ever since. *See Corley v. Adair County Court*, 10 Okla.Crim. 104, 106, 1913 OK CR 267, 134 P. 835, 835–36 (discussing history and jurisdiction of Court of Criminal Appeals); *Cook v. State*, 37 Okla. 362, 1913 OK 276, 132 P. 341, 341–42 (same). The Oklahoma Supreme Court itself has recognized that:

> [b]ecause the Court of Criminal Appeals has exclusive appellate jurisdiction in criminal matters and jurisdiction to issue supervisory writs in aid of its appellate jurisdiction, [the Court of Criminal Appeals] is the court which uses a writ power to supervise a *criminal matter in a criminal controversy or action* that is proceeding in the District Court.

*Dutton v. City of Midwest City*, 2015 OK 51, ¶ 29, 353 P.3d 532, 546 (emphasis in original). We have issued extraordinary writs in pending criminal prosecutions in a variety of situations. *See Hamill v. Powers*, 2007 OK CR 26, ¶¶ 5–6, 164 P.3d 1083, 1085–86.

¶ 4 This unique constitutional and statutory mandate establishes the Court of Criminal Appeals "in fact and in law the Supreme Court of the state in all criminal cases...." *Corley*, 10 Okl.Cr. at 106, 134 P. at 836. Any other construction of these provisions "would result in conflicts and confusion in the administration of the criminal laws of the state upon the well-recognized principle that two bodies of equal density cannot occupy the same space at the same time." *Id.* Meyer's defense attorneys concede that the Court of Criminal Appeals is the only appellate court with jurisdiction of his case. 12/23/2015 Appl. at ¶ 7. And nothing in the Oklahoma Supreme Court's December 14th order questions this Court's jurisdiction over Meyer's mandamus action.

¶ 5 The Oklahoma Supreme Court's actions threaten to create the very type of conflicts and confusion in the administration of criminal justice which Oklahoma law forbids. The Oklahoma Supreme Court's actions foreshadow a world in which unsuccessful litigants before our Court will engage in forum-shopping by filing an appeal with the state Supreme Court seeking to bypass our rulings. *See Lockett v. Evans*, 2014 OK 33, 356 P.3d 58 (Oklahoma Supreme Court granted stays of execution for two death row inmates that we previously denied); *Leftwich v. Court of Criminal Appeals*, 2011 OK 80, 262 P.3d 750 (Oklahoma Supreme Court, after staying felony trial proceedings and holding oral argument, issued an order questioning the correctness of our previous rejection of a criminal defendant's interlocutory challenge to the legality of her prosecution). In the final analysis, the Oklahoma Supreme Court's actions amount to one of two things—either an attempt to revise the constitutional and statutory mandate placing exclusive appellate jurisdiction in all criminal cases in the Court of Criminal Appeals or a blatant disregard of the Oklahoma Constitutional and statutory mandate for a bifurcated civil-criminal system of justice.

¶ 6 The Court of Criminal Appeals is the court of last resort in Oklahoma for all criminal cases. The Oklahoma Supreme Court has no authority whatsoever to question our decision in a case like Meyer's which no one disputes our jurisdiction to hear. The Oklahoma Supreme Court has held that "[p]arties may not circumvent the exclusive jurisdiction of the Court of Criminal Appeals by filing an original action in [the Supreme Court] when they disagree with [the Court of Criminal Appeals'] rulings." *State ex rel. Henry v. Mahler*, 1990 OK 3, ¶ 19, 786 P.2d 82, 87. Moreover, interference by the Oklahoma Su-

preme Court in a criminal case does not guarantee a favorable outcome for unsuccessful litigants. Such is the case here.

¶7 For the reasons discussed in today's Order, Meyer's mandamus action remains time barred and we decline the Oklahoma Supreme Court majority's apparent invitation to reconsider our ruling. Again, as explained in the Court's Order, there are statutorily-based considerations unique to our criminal law jurisprudence warranting a departure from the Supreme Court's interpretation of Rule 15(b) in civil cases. And the rules we prescribe for initiation of an appeal before this Court have the force of statute. 22 O.S.2011, § 1051(b). The present Application is nothing more than a request for rehearing. No provision in our Rules allows this Court to take that action and we therefore cannot assume original jurisdiction over the present Application. *Leftwich v. Alcorn*, 2011 OK CR 27, ¶¶ 3–4, 262 P.3d 770, 771.